**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Salvador RAMIREZ–PRECIADO, Defendant-Appellant.**

No. 84–2012.

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1984.

Rehearing Denied Dec. 26, 1984.

Roland E. Dahlin, II, Federal Public Defender, Thomas S. Berg, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GARZA, REAVLEY and JOHNSON, Circuit Judges.

GARZA, Circuit Judge.

Salvador Ramirez-Preciado appeals from his conviction pursuant to a one count indictment for conspiracy to export certain industrial machinery to Cuba without a license from the Commerce Department. Ramirez-Preciado argues, first, that the district court's charge to the jury constituted plain error and, second, that the evidence was insufficient to support the jury's verdict of guilty. We find both contentions meritless and accordingly affirm Ramirez-Preciado's conviction.

I. *Background.*

Briefly, the evidence at trial showed that defendant-appellant Salvador Ramirez-Preciado participated in a scheme with one Peralta and one Volpe to export two pellet mills to Cuba.[1] This equipment, which processes a residue of sugar cane into solid fuel, was purchased from the California Pellet Mill Company by representatives of Inbagua, a Costa Rican corporation. After a circuitous trek across the country, part of

---

1. Ramirez-Preciado was tried alone; Peralta died before trial and Volpe absconded.

the equipment going to San Antonio and the remainder to Houston, all of the equipment eventually ended up in a warehouse at the Harlingen, Texas airport.

Ramirez-Preciado had contacts in the air cargo business because of his prior employment as an air freight shipper. The evidence showed that he first used these contacts by approaching Southern Air Transport of Miami with a proposal for the transport of the pellet mills to Costa Rica from Houston, where much of the equipment was then being stored in a warehouse leased by Inbagua. According to that proposal, the cargo plane was to land in Merida, Mexico, rather than the ostensible destination in Costa Rica. At that time, the pilot was to falsify a report of engine malfunction and the cargo was to be unloaded. Suspicious of the proposal, Southern Air declined the contract and reported the proposal to the Treasury Department. Ultimately, however, Ramirez-Preciado made arrangements with Global International to provide transportation from Harlingen to Merida, along with a flight plan indicating Costa Rica as the final destination.

As a result of Southern Air's tip, customs agents began surveillance of Ramirez-Preciado, Volpe and Peralta. Having followed Ramirez-Preciado and Volpe to the Harlingen airport, the agents watched as the equipment was being loaded onto the Global plane. Meanwhile, Ramirez-Preciado and Volpe were attempting to leave in a small plane, but customs had the plane called back by the airport tower. Ramirez-Preciado was then arrested. In his briefcase was a Telex requesting transportation of the equipment from Merida to Cuba.

A search of the Department of Commerce records revealed that neither Inbagua nor Ramirez-Preciado nor any of the other individuals involved had obtained the authorization of the Commerce Department for this exportation. Ramirez-Preciado was therefore indicted for conspiring to

unlawfully export certain industrial machinery, to wit: two pellet mills, from the United States to Cuba, without obtaining a license from the Department of Commerce in violation of Section 5b, Trading with the Enemy Act of Title 50, United States Code, Appendix, Section 2410(b)(1) of Title 50, United States Code, Appendix, section 515.201 Code of Federal Regulation of Title 31 and Section 371, United States Code, Title 18.[2]

The case was tried to a jury, which returned a verdict of guilty. This appeal followed.

II. *Discussion of errors alleged.*

A. *The district court's instructions.* Ramirez-Preciado contends that the district court's instructions to the jury failed to distinguish clearly the elements of a violation of the Export Administration Act of 1979, 50 U.S.C. app. § 2410(b) from those of a violation of the Trading with the Enemy Act, 50 U.S.C. app. § 5(b). Ramirez-Preciado maintains that the district court, in effect, merged the two statutes into a single charge, thereby allowing the jury to pick and choose among the elements of both statutes. Ramirez-Preciado argues that this Court can therefore not be certain that the jurors understood that in order to convict him of conspiracy, they had to agree unanimously that either all elements of the Trading with the Enemy Act or all elements of the Export Administration Act or all elements of both statutes had been proven beyond a reasonable doubt.

We reject Ramirez-Preciado's contention because we find that the district court in fact only instructed the jury with respect to the alleged Export Administration Act violation. While it is true that both the indictment and the district court's instructions refer to the Trading with the Enemy Act by name, a review of the elements listed in both the indictment and the instructions makes clear that this case involves a violation of the Export Adminis-

---

**2.** This indictment refers to the Trading with the Enemy Act by name and to the Export Adminis-   tration Act by citation, 50 U.S.C.App. 2410(b)(1).

tration Act. The primary difference between the two statutes on these facts is the source of the required authorization. In its instructions, the district court never discussed the lack of a license from the Treasury Department, a critical element of a Trading with the Enemy Act violation. The court did, however, explain the necessity of proof of the lack of a license from the Commerce Department, an element of the Export Administration Act aspect of the indictment. On these facts, the other two elements of the two statutes are similar.[3] We are therefore convinced that the jury was instructed only as to the Export Administration Act violation.

■ ■■■■■ In this case, the district court instructed the jury without the benefit of the parties' assistance, and there was no objection. On those facts, our review of the instructions is limited to plain error. *United States v. Hinds*, 662 F.2d 362, 370 (5th Cir.1981). Viewing the instructions as a whole, we find no such error. *See United States v. Graves*, 669 F.2d 964, 970 (5th Cir.1982). While the district court's instructions were less than a model of clarity, we believe that they succeeded in adequately conveying to the jury the essential elements of the alleged Export Administration Act conspiracy: conspiring to wilfully export pellet mills to Cuba without a license from the Department of Commerce. Moreover, we do not believe that the gratuitous allusion in the instructions to the

Trading with the Enemy Act in any way prejudiced Ramirez-Preciado. Accordingly, we find no plain error in the district court's instructions to the jury.

B. *The sufficiency of the evidence.* Ramirez-Preciado next contends that the evidence was insufficient to sustain his conviction for conspiracy to violate the Export Administration Act.[4] He notes that the Export Administration Act prohibits the export only of specified items. Here, he argues, there was no showing before the jury at the time of trial that the pellet mills were specified in the regulations enforcing the Export Administration Act. Therefore, there was no evidence to support the jury's finding on that essential element of the offense.

■■■■ In making this point, Ramirez-Preciado fundamentally misunderstands the nature of the jury's role as a factfinder. Whether or not it is illegal to export pellet mills to Cuba is a question of law, one which the trial judge ably answered in the proceedings below. *See* 15 C.F.R. § 399.1. Indeed, Ramirez-Preciado concedes that pellet mills are items specified by the regulations. He merely maintains that this is a matter for the jury rather than for "judicial notice." However, all the court below "judicially noticed" was the law; it left for the jury to decide the fact issue: whether Ramirez-Preciado in fact conspired to export pellet mills to Cuba.[5] The jury's finding

3. There is a theoretical distinction involving the second element: the scope of the statutes. The Trading With the Enemy Act and related regulations do not list specific items but rather apply across the board. 31 C.F.R. § 515.204 (1983). On the other hand, the Export Administration Act prohibits the export only of specific items; however, in the case of Cuba, the Department of Commerce regulations prohibit the export of "virtually all" commodities. 15 C.F.R. § 385.1. The pellet mills in this case are clearly commodities as defined in the regulations. *Id.* at § 370.2. Moreover, a careful review of the limited exceptions to the Department of Commerce regulations reveals that none conceivably applies to pellet mills of the type involved in this case. Therefore, as a practical matter, this element of the two statutes is identical, at least on these facts.

The third element is likewise the same in that both statutes proscribe Cuba as a destination for covered items.

4. Ramirez-Preciado also challenges the sufficiency of the evidence with regard to the Trading with the Enemy Act aspect of the conviction. In view of our earlier discussion of the Trading with the Enemy Act part of this case, we need not reach that issue.

5. In view of the less than total coverage of the Export Administration Act and related regulations, see note 1, *supra,* the district court could have been more careful in explaining to the jury that they had to find beyond a reasonable doubt that the item involved in the conspiracy was a pellet mill or similar covered item. However, the court did state this element in the course of the instructions. Later in the charge, the court summarized the law, stating that it was illegal to

that Ramirez-Preciado violated that law is amply supported by the evidence.

### III. *Conclusion.*

As we find no merit to either of Ramirez-Preciado's contentions, the judgment of conviction is

AFFIRMED.

export "goods, wares, merchandise, [or] industrial machinery" to Cuba. We do not believe that the latter language misled the jury, especially in view of the fact that "virtually all" goods were included in the statutory prohibition.