United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 05-20307

———————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    v.

RUSSELL RAY PRYOR,

                                        Defendant-Appellant.

———————————————————————

Appeals from the United States District Court for the
Southern District of Texas, Houston Division

———————————————————————

Before REAVLEY, DeMOSS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Russell Ray Pryor challenges his drug convictions, arguing that he was deprived of his right to a fair trial because he was tried wearing jail garb — a green jumpsuit — and was deprived of his Sixth Amendment confrontation right when two witnesses repeated a hearsay accusation that Pryor was a drug dealer.  We AFFIRM.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 2, 2004, police officers responded to a call at an Extended Stay Motel in Houston.  Officers Gonzalez and Boutte met with Pryor and Pryor's girlfriend, Tennille Nicole Whirl, in the

motel's parking lot.  The officers first spoke with Whirl, and she told them that Pryor was a drug dealer.  Gonzalez then spoke to Pryor and patted him down for safety reasons, discovering $4900 cash in Pryor's left front pocket.  The officers placed Pryor under arrest for the assault of Whirl.

Pryor consented to a search of his vehicle and hotel room, but officers did not find any narcotics.  The officers asked Pryor if he had any drugs in his apartment, and he responded that he had pills and marijuana.  Pryor, riding in the patrol car, directed the officers to the apartment a few miles from the motel.  He signed a consent-to-search form, and directed them to his apartment, unit 1511.  The police obtained the key to the apartment from Pryor's pocket.  Officers testified that Pryor referred to the apartment as "my apartment."

Pryor told the officers that there was no one in the apartment, but that there were guns inside.  Once inside, Pryor indicated the location of the guns inside a closet.  Officers recovered a shoebox containing pills and two loaded guns.  In total, the search of the apartment yielded 664 hydrocodone pills, three full bottles of codeine syrup, and a small amount of marijuana.  Upon the discovery of the codeine syrup, officers testified that Pryor stated, "You got everything."  Additionally, officers found over 30 empty codeine bottles, as well as Karo syrup and Big Red soda, which is used to dilute codeine for distribution purposes.  While at the apartment, Pryor asked for permission to

change his shoes, described a specific pair of red and white Nikes, and told officers where to find the shoes in the closet. The officers brought the shoes to Pryor and he confirmed that they were the right ones.

At trial, Pryor's defense was that it was not his apartment. Pryor claimed that he subletted the apartment to his cousin, Ralph Holmes. Holmes and Pryor both testified that Holmes, not Pryor, lived in the apartment. Pryor argued that the police officers were lying, as was the apartment manager who testified that she saw Pryor retrieving his mail at the complex on a weekly basis, but had never seen Holmes. The jury found Pryor guilty, the court sentenced him to a term of 360 months imprisonment, and he now appeals.

## II. DISCUSSION

Pryor argues that he (1) was deprived of his right to a fair trial because he was forced to wear jail garb during the trial, and (2) was deprived of his Sixth Amendment confrontation right when two witnesses repeated a hearsay accusation that Pryor was a drug dealer. We consider each claim in turn.

A.    The trial court did not deprive appellant of his right to a fair trial and presumption of innocence.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of our system of criminal justice." *United States v. Dawson*, 563 F.2d 149, 151 (5th Cir. 1977) (citations omitted). A government entity violates that

presumption of innocence when it "compels an accused to stand trial before a jury while dressed in identifiable prison garb." *United States v. Birdsell*, 775 F.2d 645, 652 (5th Cir. 1985). "If, for whatever reason, the defendant fails to object to his attire, the presence of compulsion necessary to establish a constitutional violation is negated." *Id.* (citations omitted)

At the outset of the trial, defense counsel alerted the court of Pryor's lack of non-jail clothing to wear, and asked whether the marshals had such clothing available. A marshal said he didn't know whether they had such clothing, but would check. The court asked the marshal to do so, and instructed defense counsel to see that the family bring clothing for future sessions. Pryor wore his jail garb for the entire two-day trial, but there was no further discussion of the matter on the record. When the marshal presumably returned without clothes and the trial resumed, defense counsel had the opportunity to object to continuing in jail garb, but made no such objection. Because there was no objection, the requisite element of compulsion did not exist and no violation occurred. *Birdsell*, 775 F.2d at 652. Thus, Pryor has failed to show he was denied his right to a fair trial.

> B. Any violation of appellant's confrontation right was harmless error.

Pryor next claims that the Confrontation Clause was violated when the district court admitted an out-of-court statement made by a witness who did not testify at trial — specifically, his

4

girlfriend's statement to police that he was a drug dealer. "Confrontation Clause objections that were properly raised at trial are reviewed *de novo*, subject to harmless error analysis." *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006) (quoting *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004)).

At one point, the government asked an officer what he did based on the information he learned from Whirl. The officer answered, "I learned that he was a dope dealer." The court sustained the defense objection that the answer was not responsive and instructed the jury to disregard the statement. The government later asked another officer why he searched Pryor's vehicle, and defense counsel again objected on the basis that the answer would violate the defendant's Confrontation right. The court overruled the objection on grounds that the statement was not being offered for the truth of the matter asserted, and allowed the officer's answer for the limited purpose of showing why the officer searched the vehicle. The officer repeated Whirl's statement that Pryor was a drug dealer.

The Confrontation Clause prohibits the admission of an out-of-court testimonial statement unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). This prohibition is "irrespective of whether the statement falls within a firmly rooted hearsay exception or bears particularized guarantees of

trustworthiness." *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005). Testimonial statements may be admitted, however, so long as they are not being used to prove the truth of the matter asserted. *Id*. at 349; *Crawford*, 541 U.S. at 59 n.9 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.") (citation omitted).

Pryor plausibly argues that the statement was testimonial and, despite court statements to the contrary, was admitted for the truth asserted. We need not wade into those waters because, even assuming a Confrontation Clause violation occurred, the error was harmless. To determine whether the Confrontation Clause error was harmless, "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

The government's evidence against Pryor was substantial and Pryor's only defense was that the apartment in question was not his. This claim is in no way undercut by the allegedly wrongfully admitted statement. Further, it was supported only by his own testimony and that of his cousin, while the officers testified that Pryor claimed it was his apartment, provided the key to it, led the officers to it, knew where the guns were located inside, knew which

6

drugs were in the apartment, and told officers, upon finding the last bottles of codeine syrup, that they'd found everything. Further, Pryor was able to direct the officers to the closet and describe a specific pair of shoes that he wanted to wear. The clothing in the closet appeared to fit Pryor. Officers also found Pryor's personal mail inside the apartment. Finally, the apartment manager testified that she saw Pryor once a week collecting his mail, and that he'd answered the door on at least one occasion.

Pryor argued at trial that the witnesses against him, including the officers and apartment manager, were lying. To the extent that the trial boiled down to a swearing match between Pryor and the government's witnesses, the testimonial statement could have conceivably tarnished Pryor's credibility as a witness in the eyes of the jury. Nevertheless, given the extent of the evidence against Pryor, the admission of Whirl's testimonial statement represented a small part of what was an otherwise overwhelming accumulation of evidence. Therefore, the admission of that statement, despite any possible Confrontation Clause violation, was harmless.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.