United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2007

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 05-41404

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

GUADALUPE VASQUEZ; DAVID VASQUEZ, Jr.,
also known as David Vasquez,

Defendants-Appellants

Appeals from the United States District Court
for the Southern District of Texas
(04-CR-369)

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants David Vasquez, Jr. ("David") and Guadalupe Vasquez ("Guadalupe"), collectively "the Vasquez brothers" or "the defendants," were convicted by a jury of (1) conspiracy to commit mail fraud and to commit extortion under color of official right, (2) aiding and abetting mail fraud, and (3) aiding and abetting extortion under color of official right. David was also convicted of three counts of violating the Travel Act to promote state bribery.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

They challenge their convictions on the grounds that (1) the record on appeal is incomplete, and (2) the admission of the recorded conversations between an alleged unindicted co-conspirator and an undercover agent violated their Sixth Amendment confrontation rights. We affirm.

## I. Facts and Proceedings

David was the superintendent of schools for Santa Rosa Independent School District ("S.R. ISD"), and Guadalupe was a member of the S.R. ISD board. Daniel Rodriguez worked as a frontman at Conceptual Reality, Inc., ("CRI"), an architectural firm, that had entered into illegal contracts with the schools.

As part of an investigation of corruption in the awarding of municipal contracts in the Rio Grande Valley, Special Agent Ozvaldo Alaniz ("Agent Alaniz"), working undercover, became acquainted with Rodriguez. Agent Alaniz represented himself to be a vendor of school supplies and furniture. Rodriguez introduced Agent Alaniz to city, school, and other elected officials in the Rio Grande Valley, including the defendants. Rodriguez told Agent Alaniz that he had payed bribes to local officials to convince them to award contracts to CRI. Specifically, Rodriguez indicated that he had bribed the Vasquez brothers in the past, giving them cash and paying for vacations.

Through Rodriguez, Agent Alaniz attempted to enter into a contract with S.R. ISD. David informed Agent Alaniz that the only supplies the schools needed were tires. Agent Alaniz asked if there were any personal items that David needed; David indicated that he needed new tires for his truck. Agent Alaniz delivered the tires to the school district, but David had already purchased his own tires. David agreed with Agent Alaniz that Guadalupe should receive the tires. In the end, Agent Alaniz purchased tires for Guadalupe's daughter and son-in-law.

Rodriguez purchased airline tickets to Las Vegas and paid for meals and a hotel room in Las Vegas for the defendants. David told federal officers that he

believed that Rodriguez had paid for the trip to thank David for helping Rodriguez obtain a school contract. David further admitted asking Rodriguez to pay for another brother, Danny Vasquez, to fly to Washington, D.C. David also acknowledged that Al Cardenas, who had been pursuing a large construction contract with the school district, obtained a female escort service for David. And, the construction contract was awarded to Cardenas.

The Vasquez brothers were convicted by a jury on the above named counts. David also was convicted of violating the Travel Act to promote state bribery. David was sentenced to a 48-month term of imprisonment to be followed by a three-year term of supervised release. He was ordered to pay a $75,000 fine and a special assessment fee. Guadalupe was sentenced to a 54-month term of imprisonment to be followed by a three-year term of supervised release. He was ordered to pay a $60,000 fine and a special assessment fee. The defendants timely filed a notice of appeal.

We extended the briefing deadline at the request of the defendants' appellate counsel, who had not represented them at trial, based on her report that there were large portions of the record missing and that the transcript of the trial was incomplete. Missing from the record were thirty-two recordings, including the conversations recorded by Agent Alaniz that were admitted at trial, as well as government exhibits. Appellate counsel had contacted the Clerk of Court for the Southern District of Texas, but the clerk had neither any record of the exhibits introduced at trial by the government nor any transcripts of the tape recordings admitted at trial. In her brief, counsel asserted that the gaps in the record require that the defendants' convictions be reversed and a new trial granted. After the defendants' brief was filed, however, the tape recordings were sent to us by the district court. In addition, the government submitted transcripts of excerpts of those tape recordings when it filed its brief. Thus, the record before us, to which counsel had access, is now complete. Although we

allowed the defendants' counsel time to file a supplemental brief, she has failed to do so.

## II. Law and Analysis

### A.    Right to a Complete Record on Appeal

"[A] criminal defendant has a right to a record on appeal which includes a complete transcript of the proceedings at trial."[1] Similarly, the Court Reporter Act requires that a court reporter "shall record[] verbatim by short hand . . . or any other method . . . all proceedings in criminal cases had in open court."[2] When, as here, "a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal."[3] Ordinarily in such a case, we remand to the district court for a determination whether the record can be reconstructed.[4] Here, however, remand is not necessary, as the record before us is now complete.[5]

### B.    Confrontation Clause

The Vasquez brothers also contend that the admission of Rodriguez's statements violated their rights under the Confrontation Clause. "The Confrontation Clause prohibits the admission of an out-of-court testimonial statement unless the witness is unavailable and the defendant has had a prior

---

[1] United States v. Selva, 559 F.2d 1303, 1305 (5th Cir. 1977) (Selva II).

[2] 28 U.S.C. § 753(b).

[3] Selva II, 559 F.2d at 1306 (footnote omitted).

[4] See, e.g., United States v. Taylor, 607 F.2d 153, 155 (5th Cir. 1979); United States v. Selva, 546 F.2d 1173, 1174-75 (5th Cir. 1977) (Selva I).

[5] See United States v. McCusker, 936 F.2d 781, 785 and n.4 (5th Cir. 1991) (per curiam) (finding that none of the record was missing where tape recordings introduced and played at trial, but not simultaneously transcribed by the court reporter, were included in the record on appeal).

opportunity to cross-examine the witness."[6] "This prohibition is 'irrespective of whether the statement falls within a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness.'"[7] "Confrontation Clause objections that were properly raised at trial are reviewed de novo, subject to harmless error analysis."[8]

Although the Vasquez brothers objected to the admission of Rodriguez's statements on both hearsay (the denial of which has not been appealed) and Confrontation Clause grounds, the government contends that the Vasquez brothers have not preserved this objection on appeal, as, it asserts, they did not state the specific ground of objection, i.e., that Rodriguez's statements were testimonial. The government therefore urges us to apply plain error review. This argument fails. When a criminal defendant objects on Confrontation Clause grounds, he is implicitly contending that the challenged statement is testimonial. After all, a statement that is not testimonial cannot violate the

---

[6] United States v. Acosta, 475 F.3d 677, 680 (5th Cir. 2007).

[7] United States v. Pryor, 483 F.3d 309, 312 (5th Cir. 2007) (citing Crawford v. Washington, 541 U.S. 36, 59 (2004) and quoting United States v. Holmes, 406 F.3d 337, 348 (5th Cir. 2005)). To the extent the government argues that we have rejected the Vasquez brothers' assertion that the fact that a statement is excluded from the hearsay definition by Rule 801(d)(2)(E) does not dispose of the confrontation clause issue, it is clearly incorrect. United States v. Delgado, 401 F.3d 290, 299 (5th Cir. 2005), cited by the government, is not to the contrary. In Delgado, the court noted that the statements at issue were both non-testimonial and admissible hearsay. The court did not hold that the statements were non-testimonial because they were admissible hearsay.

The government argues at length that the statements at issue fall within Rule 801(d)(2)(E) of the Federal Rules of Evidence. The defendants, however, have not appealed the denial of their hearsay objections.

[8] Pryor, 483 F.3d at 312 (quoting United States v. Jiminez, 464 F.3d 555, 558 (5th Cir. 2006)).

Confrontation Clause.[9]  Accordingly, we review the defendants' Confrontation Clause challenge de novo.

The Vasquez brothers contend that, because the "jig [was] up" for Rodriguez by the time the FBI started investigating the Vasquez brothers, Rodriguez's statements were testimonial.  There is nothing in the record, however, to suggest that Rodriguez was aware that his conversations with Agent Alaniz were being recorded.  Instead, it appears that Rodriguez made the statements at issue unwittingly to an undercover officer.  Thus, the statements are not testimonial and their admission does not violate the Vasquez brothers' Confrontation Clause rights.[10]

### III. Conclusion

Finding no error, we AFFIRM.

---

[9] Crawford v. Washington, 541 U.S. 36, 59 (2004); Holmes, 406 F.3d at 348 ("Because the categorical rule adopted in Crawford is triggered only with respect to 'testimonial' evidence, whether a challenged statement falls within the class of evidence deemed 'testimonial' will generally be outcome-determinative.").

[10] See Davis v. Washington, __ U.S. __, 126 S. Ct. 2266, 2275 (2006) (citing Bourjaily v. United States, 483 U.S. 171, 181-184 (1987) and noting that "statements made unwittingly to a Government informant" were "clearly nontestimonial").