# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2021

Lyle W. Cayce
Clerk

No. 20-40179

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ELDER ORELLANA-CASTELLANOS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:19-CR-1943-1

Before WIENER, COSTA, and WILLETT, *Circuit Judges*.

PER CURIAM:[*]

After a one-day trial, a jury found Elder Orellana-Castellanos guilty of transporting Suamy Lemuz-Oviedo within the United States despite knowing—or in reckless disregard of the fact—that Lemuz-Oviedo had "entered, or remain[ed] in the United States in violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii). There is no question the defendant was transporting

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

Lemuz-Oviedo; he was driving Lemuz-Oviedo and Lemuz-Oviedo's girlfriend, Kayla Bueso-Morel, in a vehicle that arrived at the Falfurrias immigration checkpoint in south Texas. Nor is there a question about Lemuz-Oviedo's immigration status; he is a Honduran national without lawful status in the United States (the same is true of Bueso-Morel). It is also undisputed that the defendant's transporting of Lemuz-Oviedo furthered that unlawful presence by helping him get north. The only arguable element of the crime is whether the defendant knew about Lemuz-Oviedo's unlawful status. On appeal, the defendant argues that certain evidence was admitted to prove this disputed element in violation of the Confrontation Clause.

On the knowledge element, Lemuz-Oviedo testified at trial that the defendant knew Lemuz-Oviedo lacked lawful status because the defendant coached both passengers on what lies to tell Border Patrol agents if they were questioned. But the defendant argues the jury heard other evidence—specifically, the out-of-court statement of the other passenger, Bueso-Morel—that tainted his conviction in violation of the Confrontation Clause. The out-of-court statement is the law enforcement report summarizing what Bueso-Morel told Border Patrol agents at the checkpoint. Bueso-Morel was deported before trial, so she did not testify and thus was not subject to cross-examination.

The government concedes that introduction of the report summarizing Bueso-Morel's statement violated the Confrontation Clause but contends that defense counsel either invited or waived the error because at times it appeared the defense was seeking to elicit the statement. What about Bueso-Morel's statement was helpful to the defense? Although Bueso-Morel told Border Patrol agents that the defendant knew both passengers were illegally in the United States, Bueso-Morel said that the person who coached them on what to tell law enforcement was not the defendant but the person who performed the previous step in the smuggling operation: picking

them up at a stash house near the border and driving them to a Whataburger in Edinburgh, where defendant then picked them up for the drive north to Houston that was cut short with the arrest at the checkpoint. So part of Bueso-Morel's hearsay statement helped the government—she corroborated Lemuz-Oviedo's in-court testimony that the defendant knew they entered the country unlawfully—but part of it helped the defendant because it contradicted Lemuz-Oviedo's testimony that the defendant, not another person, coached them to lie to Border Patrol.

We need not decide whether defense counsel waived or invited the Confrontation Clause error because the government has proved beyond a reasonable doubt that the error was harmless. *See United States v. Sarli*, 913 F.3d 491, 496 (5th Cir. 2019). It is not easy to prove that a Confrontation Clause violation is harmless. The government must do much more than show that the properly admitted evidence would have been sufficient to allow a jury to convict the defendant. *Lowery v. Collins*, 988 F.2d 1364, 1372 (5th Cir. 1993) (finding error when court considered only whether the properly admitted evidence would have allowed a rational jury to convict under a "'sufficiency of the evidence' analysis"). It instead must show "there is [no] reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Kizzee*, 877 F.3d 650, 661 (5th Cir. 2017) (alternation in original) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). This standard is a "demanding but not insurmountable" hurdle. *Sarli*, 913 F.3d at 496; *see also United States v. Ogba*, 526 F.3d 214, 227–30 (5th Cir. 2008) (concluding that Confrontation Clause error was harmless because the other evidence was so strong); *United States v. Pryor*, 483 F.3d 309, 312–13 (5th Cir. 2007) (same). The government gets over that hurdle here.

Lemuz-Oviedo told the jury that the defendant knew the passengers were unlawfully in the United States. No direct evidence to the contrary was

presented.    The circumstantial evidence strongly corroborated Lemuz-Oviedo's testimony.    The defendant picked up two people whom he had never met at a Whataburger near the border for a lengthy, nighttime drive to Houston.    This was the final leg in a smuggling operation that had taken Lemuz-Oviedo and Bueso-Morel across three national borders.    They paid $12,000 to the smugglers.    It would be "implausible" to believe that the person performing the last, critical act in transporting the aliens from Honduras to Houston was an unknowing participant who just decided to help two strangers by taking them on a 300+ mile journey.    *See Sarli*, 913 F.3d at 497.

The prosecutor did mention Bueso-Morel's out-of-court statement in closing.    But the defense focused on it more in closing as well as during the testimony.    This brings us back to the double-edged nature of the statement.    Although we do not decide whether defense counsel's use of the hearsay statement to raise doubts about Lemuz-Oviedo's credibility rose to the level of waiver or invited error, it is relevant to whether introduction of the statement contributed to the guilty verdict.    *Cf. Hafdahl v. Johnson*, 251 F.3d 528, 540 (5th Cir. 2001) (recognizing that counsel's "opening the door" to out-of-court testimony can be a factor in harmlessness analysis).    Allowing the jury to hear Bueso-Morel's statement created the only inconsistency in the government's case—about whether defendant or the person who brought the passengers to the Whataburger coached them on what to tell Border Patrol.    Defense counsel sought to exploit the inconsistency given the dearth of other evidence favorable to the accused.    Indeed, if Bueso-Morel's statement had been properly excluded under the Confrontation Clause, it is hard to see what defense counsel could have argued.    So the hearsay statement provided the defense's main line of attack.

Because the challenged evidence was the defense's only way to poke a hole in the government's case and the nonhearsay evidence of guilt was so

No. 20-40179

compelling, the government has shown beyond a reasonable doubt that the error was harmless.

The judgment is AFFIRMED.