**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Barry F. BRYANT,**
**Defendant-Appellant.**

**No. 84–2703.**

United States Court of Appeals,
Fifth Circuit.

August 28, 1985.

Rehearing Denied Oct. 11, 1985.

P. Joseph Brake, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before RANDALL, DAVIS and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Appellant Barry F. Bryant appeals from his conviction on four counts of a superseding indictment. He raises five grounds of error: (1) that adding seven counts in a superseding indictment constituted prosecutorial vindictiveness; (2) that evidence was insufficient to establish that equipment he transported in interstate commerce was valued in excess of $5,000 and that he knew the equipment was stolen; (3) that the jury should have been allowed to determine if certain false statements were "material"; (4) that questioning of Bryant which required that he assess the credibility of other witnesses impermissibly invaded the province of the jury; and (5) that in closing argument the prosecutor improperly implied that there existed additional evidence the government was not permitted to introduce. None of Bryant's five grounds of error have merit; consequently, for the reasons that follow, we affirm his conviction.

I. *Factual and Procedural Background*

In early 1981 Barry Bryant, a technical sergeant in the United States Air Force, actively pursued the idea of forming a corporation for the purpose of establishing and operating a retail sporting goods store. He planned to solicit investments from his co-workers and other acquaintances, for which they would receive shares in the newly formed corporation, and then apply for a Small Business Administration ("SBA") loan for the balance needed to start the store. In order to persuade peo-

ple to invest in the company, Bryant prepared several lists of varying length containing the names of locally prominent individuals who had already invested and, in at least one instance, the number of shares issued to the individuals listed. One of the lists shown to prospective investors was titled *"Confidential*—Members" and contained the names of the Air Force Base commander, a local sportscaster, and several individuals with considerable expertise in business and accounting matters. Bryant represented that the persons whose names appeared on the list had agreed to invest in the company. Many of those listed, however, had not agreed to invest and had, in fact, firmly rejected Bryant's proposal.

A number of persons, however, did agree to invest in the proposed corporation, which the investors decided to call Brochlmns; investors were eventually given share certificates representing their ownership in the corporation. Although he had not actually received all of the money allegedly promised by the investors ($40,000), on September 28, 1981, Bryant visited the SBA office in San Antonio, Texas, to obtain information about a loan. He represented to a loan officer that he had in fact collected $40,000 for a cash injection into the business. On October 8 Bryant returned to the SBA with his business proposal and related papers, and the next day he submitted a formal loan application.

In order to evaluate a loan application, the SBA requires information concerning the source of funds constituting the cash injection—a list of the stockholders and the amount of money each invested in the business—as well as the names, background, and business-related qualifications of those who will be involved in the proposed business on a day-to-day basis, particularly at the management level. Accompanying Bryant's loan application was a list of shareholders to whom 4000 shares, representing a cash injection of $40,000, had

allegedly been issued. The list was broken down into the number of shares issued to each investor and the corresponding percentage of ownership. In fact, however, and as Bryant concedes in his brief on appeal, "many of the people named in the list did not invest, and many who did invest invested far less than was represented on the list." [1] Nevertheless, the SBA approved Bryant's loan application for $65,-000, disbursed the funds and took and perfected a first security interest in any current or after-acquired equipment. These false representations to the SBA as to the number of shareholders and as to the cash raised to be injected into the business form the basis for count four of the superseding indictment.

In less than a year the sporting goods store, named Sportsman's Paradise, was in financial difficulty; as a result the company had difficulty complying with the repayment terms of the SBA loan. Bryant then suggested to the shareholders that Brochlmns acquire the silk screen operation of another company in order to enhance the earning potential of the store. He began to solicit additional investments for that specific purpose and collected at least $5,500 from the shareholders and issued them additional shares in exchange. He then purchased certain silk screen equipment together with items of inventory for in excess of $12,000. Although the silk screen equipment was physically located in Sportsman's Paradise, Bryant gave the operation a separate identity, naming it Special T Designs. However, he commingled the receipts from the silk screen operation and the sporting goods sales. Although the new operation brought substantial additional revenue into the company, Sportsman's Paradise continued to experience financial difficulty.

In late 1982 the Air Force transferred Bryant to Los Angeles; nevertheless, he

---

**1.** Also attached to the application was a list of corporate officers who had been elected by the shareholders and a "resume" summarizing the qualifications of persons who would be actively involved in running the business. In fact, however, approximately half of the people listed as corporate officers were neither officers nor shareholders in Brochlmns, nor did they know that Bryant had used their names in that manner.

retained control of the store's books, records and checking accounts. When Bryant visited San Antonio in the winter of 1982–83, he attempted but failed to sell the silk screen equipment, telling a potential buyer that Special T Designs was entirely separate from Brochlmns and that he alone owned the silk screen equipment.

In March 1983, unable to obtain payments on the $65,000 loan, the SBA turned the loan over to its liquidation division. While conducting an inventory of the store, the liquidation officer asked Bryant who owned the silk screen equipment; Bryant responded that he had leased it from Zaddock Marshall. It is this false statement which forms the basis for count five of the superseding indictment.

Later, after the SBA agreed to a thirty-day moratorium on foreclosure, Bryant, claiming the silk screen equipment as his own, took it to California where he used the equipment to start a new business. He never obtained the permission of any of the shareholders or of the SBA and did not tell the shareholders or the SBA what he had done. This conduct forms the basis for counts six and seven of the superseding indictment, respectively, charging Bryant with interstate transportation of stolen goods and conversion of property pledged and mortgaged to the SBA.

Bryant was charged in the original indictment with one count of fraudulent conversion of collateral from the SBA in violation of 15 U.S.C. § 645(c) (count eight of the superseding indictment). A superseding indictment, however, added seven additional counts, including two counts of theft by misrepresentation, 18 U.S.C. § 13 (assimilating state theft statute) (counts one and two); three counts of making false statements to a government agency, 18 U.S.C. § 1001 (counts three, four and five);

one count of interstate transportation of stolen property, 18 U.S.C. § 2314 (count six); and an additional count of conversion of SBA collateral, 15 U.S.C. § 645(c) (count seven).[2] Following a six day trial, the jury returned a verdict of not guilty on counts one, three and eight and guilty on counts four, five, six and seven.[3] Bryant was then sentenced to three years imprisonment on each of the false statement counts (counts four and five), to run concurrently. On the remaining counts (counts six and seven), he was assessed three years imprisonment, to run concurrently; however, the court suspended the execution of the sentence as to these counts and placed Bryant on five years supervised probation, to follow his term of imprisonment. Bryant then filed a timely notice of appeal.

## II. *Prosecutorial Vindictiveness*

Bryant argues that his conviction on counts four through seven of the superseding indictment should be reversed and all counts dismissed because the government added counts one through seven of the superseding indictment in retaliation for his disclosure of evidence which tended to prove his innocence as to the only count in the original indictment.[4] The government counters that its decision to bring additional charges against Bryant was motivated not by a retaliatory or vindictive motive, but rather by the discovery, in the course of preparation for the trial, that the scope of Bryant's illegal actions was much broader than had been known at the time the original indictment was filed.

This Court addressed this issue in *United States v. Chagra*, 669 F.2d 241 (5th Cir.), *cert. denied*, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982), wherein we stated:

**2.** The defendant's motion to dismiss these seven added counts in the superseding indictment on the ground of prosecutorial vindictiveness was denied.

**3.** The government's motion to dismiss count two in the superseding indictment was granted by the court.

**4.** In his brief on appeal, Bryant does not contend, as he did before the district court, that the alleged prosecutorial retaliation was in response to his refusal to negotiate a plea. Bryant did raise before the district court, however, the contention, urged here, that the motivation for the added counts was his production of evidence proving a viable defense to the original charge.

As a procedural matter, the government may obtain a superseding indictment against a defendant at any time prior to trial and may select which indictment to proceed under at trial. *United States v. Stricklin,* 591 F.2d 1112, 1115 n. 1 (5th Cir.1979) (collecting cases). At the same time, however, the government may not exercise its authority to prosecute a defendant when simply and purposely done in order to punish a defendant in retaliation for his exercise of his rights rather than to further a legitimate law enforcement interest.

669 F.2d at 247–48 (citing *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *United States v. Walker,* 514 F.Supp. 294, 311–13, 316–23 (E.D. La.1981)). "[B]ut where the government's purpose for its charging decision can be traced to a legitimate, nonvindictive rationale, such as the discovery of a new witness or a different approach to a case by a new prosecutor, ... the government may proceed with its new charges." 669 F.2d at 248 (citations and footnote omitted). Bryant contends that no such legitimate, nonvindictive rationale can be shown. We disagree.

█ While the district court's denial of Bryant's pretrial motion to dismiss was premised upon Bryant's failure to present any evidence on the issue of prosecutorial vindictiveness, the government did indicate that its decision to file additional counts in the superseding indictment resulted from the discovery of new evidence obtained as a result of interviews with prospective witnesses in preparation for the trial. We conclude that this newly discovered evidence, indicating that the extent of Bryant's misconduct was much greater than had been known at the time the original indictment was filed, justifiably motivated the prosecutorial decision to obtain additional counts.

We also conclude that a presumption of vindictiveness is not warranted in this case. In *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Supreme Court reversed a Fourth Circuit decision which held that a presumption of prosecutorial vindictiveness arises from a pretrial decision to modify the charges against a defendant who had invoked his right to a jury trial. Here, as in *Goodwin,* "there is no evidence ... that could give rise to a claim of *actual* vindictiveness...." *Id.* at 380, 102 S.Ct. at 2492 (emphasis in original). Here also, as in *Goodwin,* we consider a prosecutor's pretrial decision to file additional counts in a superseding indictment. Unlike *Goodwin,* however, the pretrial prosecutorial action in this case was prompted not by a defendant's request for a jury trial but rather by newly discovered evidence supporting the imposition of additional counts. Thus the Court's holding in *Goodwin* is clearly applicable here and in light of the applicability a presumption of vindictiveness is not warranted.

Moreover, we find the Supreme Court's rationale in *Goodwin* for declining to impose such a presumption in a pretrial setting persuasive:

There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

457 U.S. at 381, 102 S.Ct. at 2492. Absent this presumption, absent any evidence of retaliatory intent or vindictiveness [5] and in light of the government's discovery that Bryant's criminal conduct was broader in scope, we find no vindictiveness in this case. The decision to seek a superseding indictment was not motivated by vindictiveness but instead was the product of a legitimate law enforcement decision to bring Bryant to answer for his misrepresentations and conversion of SBA collateral.

### III. Sufficiency of the Evidence

Bryant challenges the sufficiency of the evidence to support the jury verdict of guilty on count six charging him with interstate transportation of stolen property. The National Stolen Property Act, under which Bryant was convicted, provides in part:

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ...

> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 2314 (1970). Neither party questions that the government bears the burden of proving that the value of the stolen silk screen equipment exceeded $5,000 and of proving that the stolen equipment was transported with fraudulent intent. United States v. Freeman, 619 F.2d 1112, 1118 (5th Cir.1980), cert. denied, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). Bryant does question, however, whether the evidence sufficiently established (a) that the value of the stolen silk screen equipment exceeded $5,000 and (b) that he possessed the requisite fraudulent intent.

In reviewing the sufficiency of the evidence to support a criminal conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); United States v. Lerma, 657 F.2d 786, 789 (5th Cir.1981), cert. denied, 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982). All of the evidence must be considered in the light most favorable to the government, Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, and we must accept all credibility judgments and reasonable inferences that support the verdict. United States v. Dean, 666 F.2d 174, 177 (5th Cir.), cert. denied, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). In addition, we note that "[t]he standard for review of the sufficiency of the evidence to support the conviction is the same whether the evidence is direct or circumstantial." United States v. Hilburn, 625 F.2d 1177, 1180 (5th Cir.1980) (citing Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954)).

■ We have no difficulty concluding that sufficient evidence established that the stolen silk screen equipment was valued in excess of $5,000. Bryant argues that because no single piece of equipment was valued in excess of $5,000 and because the government did not identify which piece of equipment he transported to California, there is insufficient evidence to support the verdict of guilty on count six. Bryant's argument ignores uncontroverted evidence that he had represented to various shareholders of Brochlmns that purchasing the silk screen operation would cost at least $12,000 and that the major components of the silk screen system, excluding inventory, were valued in excess of $9,000. In addition, evidence that Bryant operated a silk screen business in California, viewed in conjunction with the fact that no evidence was introduced indicating that Bryant had acquired any silk screen equipment after moving to California, gives rise to a reason-

**5.** See Chagra, 669 F.2d at 248 n. 6.

able inference that Bryant removed and transported *all* the silk screen equipment.[6]

Reviewing this evidence in a light most favorable to the government and accepting, in support of the verdict, the reasonable inference that Bryant transported all of the silk screen equipment to California, we conclude that any rational trier of fact could have found, beyond a reasonable doubt, that the value of the transported stolen equipment exceeded $5,000. That the jury verdict is supported by circumstantial rather than direct evidence, does not alter our conclusion. *United States v. Hilburn*, 625 F.2d 1177, 1180 (5th Cir.1980). The jury verdict was amply supported by the evidence.[7]

 Bryant also contends that insufficient evidence exists to establish that he stole or converted the silk screen equipment with fraudulent intent. Bryant first argues that he alone owned the silk screen operation, that the equipment was not collateral pledged to SBA and therefore that his removal of the equipment was not a conversion of SBA collateral. This argument is meritless. Brochlmn shareholders paid for the silk screen equipment in return for Brochlmn shares. Further, Bryant commingled receipts from sales attributable to the silk screen operation and from sales of sporting goods. The evidence clearly establishes that the silk screen equipment was property acquired and owned by Brochlmns and therefore was also collateral pledged to the SBA.

Bryant next argues that by discussing his plans to take equipment to California with one shareholder he could not have taken the equipment with fraudulent intent. The record shows, however, that Bryant knew that the shareholders of Brochlmns had acquired the silk screen equipment—having solicited their additional investments, collected the money, and issued shares in exchange—and that he then unilaterally removed the equipment from the possession of Brochlmn in Texas to California, holding himself out as the owner of the equipment, not Brochlmns.[8] Bryant clearly knew that the equipment he transported to California was property acquired and owned by Brochlmns, collateral pledged to SBA, and did not belong to him. That at the time of its transportation in interstate commerce Bryant "knew that [the equipment] had either been stolen, converted or taken by fraud," *United States v. Herring*, 602 F.2d 1220, 1224 (5th Cir.1979), *cert. denied*, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 732 (1980); *see* § 2314, is adequately supported in the evidence. We conclude, therefore, that sufficient evidence supports the jury's verdict on count six of the superseding indictment.

### IV. *Materiality*

Bryant next contends that the district court erred in declining to submit to the jury the issue of materiality of the false statements charged in counts three, four and five.[9] Bryant argues that when facts warrant the conclusion, as here, that the

---

6. Bryant admitted removing and transporting to California "a printer, a dryer and a camera." At the time Bryant purchased the silk screen equipment, approximately six months before the equipment was removed to California, the seller's itemized list of the equipment included the following values:

| | |
|---|---|
| 4–Color Hopkins Printer | $1,200 |
| Cincinnati Infared [sic] Dryer | $3,500 |
| NuArc Model VV1418 Camera | $1,800 |
| | $6,500 |

Thus, by his own admission, the jury was entitled to conclude that the value of the equipment Bryant transported to California exceeded $5,000.

7. That the jury addressed itself to this equipment value element of count six is not disputed.

In response to a question from the jury—Do we need to determine the value of the equipment?—the district court answered:

One of the essential elements of Count 6 is as follows:

"2. That the silk screening equipment had a value in excess of $5,000."

8. After he took the equipment to California, Bryant remarked to a potential purchaser of the equipment, Leroy Neal, that he was the sole owner of the equipment.

9. After taking the issue from the jury, the court instructed the jury that "the statements charged in Counts Three, Four and Five of the indictment are statements as to material facts."

false statements may not have affected the government's decision to approve the SBA loan,[10] then it is proper for the trial court to submit the question of the materiality of those statements to the trier of fact. For this proposition, he relies upon *Gonzales v. United States*, 286 F.2d 118 (10th Cir.1960), *cert. denied*, 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190 (1961). *But see United States v. Schaffer*, 600 F.2d 1120, 1123 (5th Cir. 1979). We decline to accept such an argument.

■ Counts three, four and five of the superseding indictment allege conduct that violates 18 U.S.C. § 1001. As Bryant recognizes in his brief on appeal, this Circuit has long held that the issue of materiality of false statements made in violation of 18 U.S.C. § 1001 is a matter of law for the court, not the jury, to decide. *United States v. McIntosh*, 655 F.2d 80 (5th Cir. 1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1450, 71 L.Ed.2d 662 (1982); *United States v. Schaffer*, 600 F.2d 1120 (5th Cir.1979). Bryant sets forth no reasons why this Court should set aside our long-standing and unequivocal treatment of the issue of materiality in this context.

Nor does the *en banc* decision of this Court in *United States v. Johnson*, 718 F.2d 1317 (5th Cir.1983), alter our treatment of this issue. In *Johnson*, we held that the district court erred by instructing the jury as a matter of law that a certain document was a "security," an essential element of 18 U.S.C. § 2314. Bryant's argument proceeds along much the same line: that the district court erred by instructing the jury as a matter of law that the false representations, both oral and written,

were "material," an essential element of 18 U.S.C. § 1001. In *Johnson*, however, we explicitly left intact the rule that materiality in a § 1001 prosecution is properly reserved for the court's determination: "[W]e do not by this opinion erode ... our many decisions ... holding that the materiality of false statements is a question for the court." 718 F.2d at 1324 (citing, *inter alia, United States v. Baker*, 626 F.2d 512, 514 n. 4 (5th Cir.1980) (false statements to a government agency); *United States v. Lichenstein*, 610 F.2d 1272, 1278 (5th Cir.) (false statements to a government agency), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980); *United States v. Schaffer*, 600 F.2d 1120, 1123 (5th Cir.1979) (false statements to a government agency) (rejecting the invitation to follow *Gonzales v. United States*, 286 F.2d 118 (10th Cir. 1960)). The district court properly determined the question of the materiality of the false representations as a matter of law.

### V. *Cross-Examination of Bryant*

During the course of Bryant's direct examination his testimony squarely contradicted that of several other witnesses. During cross-examination, the prosecutor asked him if the other witnesses had testified inaccurately.[11] Defense counsel objected, stating:

> Your Honor, I'd like to interpose an objection at this point to Counsel repeatedly asking Sergeant Bryant to assess the credibility of the witnesses. That's a question for the jury to determine and not for Mister—not for Sergeant Bryant to determine.

The court overruled the objection. On appeal, Bryant presses much the same argu-

---

10. The SBA loan officer testified, however, that he relied on the information in the loan application documents in his decision to recommend approval of the loan.

11. For example, concerning the refusal of Fred Blake to buy shares of Brochlmns corporation, the following occurred:

Prosecutor:
Q That was different from the way he [Blake] testified about it. You realize that? He testified that you called him down at school and that's how he—

Bryant:
A I called him at school, yes.
Q And that's when he refused. That's what he testified to.
A When he refused what?
Q To buy shares from you.
A No, that's not what happened.
Q That's not what happened either?
A No.
Q So he didn't testify accurately either?
A If you will.

ment. He contends that questions of this type are prejudicial because he, not the jury, was required to assess the credibility of the other witnesses. We disagree.

While it is indisputable that the jury is the exclusive arbiter of the credibility of witnesses, *see United States v. Caballero*, 712 F.2d 126 (5th Cir.1983), it is also clear, as we have stated, that

> [w]hen the credibility of a witness is placed in issue the district court has broad discretion concerning the extent to which cross-examination may exceed the scope of direct examination. *United States v. Contreras*, 602 F.2d 1237 (5th Cir.), *cert. denied*, 444 U.S. 971, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979). When a defendant chooses to testify, he makes an issue of his credibility and the Government is allowed to cross-examine the defendant with respect to matters about which he has testified. *United States v. Dooley*, 587 F.2d 201 (5th Cir.), *cert. denied*, 440 U.S. 949, 99 S.Ct. 1430, 59 L.Ed.2d 639 (1979); *United States v. Caron*, 474 F.2d 506 (5th Cir.1973).

*United States v. Thetford*, 676 F.2d 170, 183 (5th Cir.1982), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983).

■ In light of Bryant's evasiveness in responding to the various questions from the prosecutor and in light of the fact that Bryant's direct testimony *squarely* contradicted that of several government witnesses,[12] we believe the district court acted well within its broad discretion in allowing the prosecutor to ask Bryant whether his testimony necessarily meant the testimony of other witnesses was untrue. *Thetford*, 676 F.2d at 183. Moreover, even if the prosecutor's questions invaded the province of the jury, Bryant suffered no prejudice from such questioning. In each instance, Bryant unequivocally stated that the testimony of the government witness was indeed untrue. We cannot say that Bryant is prejudiced when he is given an opportunity to affirm that contradictory testimony is fallacious. The error, if any, is harmless.

### VI. *Improper Closing Argument*

Bryant argues that during closing argument the prosecutor improperly responded to his counsel's statement that the government could have taken possession of the silk screen equipment and would have done so had it believed the equipment was collateral pledged to the SBA.[13] He contends the response was improper and prejudicial because it implied to the jury that the government had other evidence which the jury was not permitted to hear that would explain why the SBA did not take possession of the equipment.[14] We conclude that

---

**12.** For example:

> Q [Blake] had told you he didn't want to invest, had he not?
> A Oh, he still wanted to invest. He still eventually got shares.
> Q Yes, but that's 'cause you sent them to him.
> A I did not give any shares away.
> Q Well, you heard Fred Blake testify in this courtroom under oath that he told you in August of 1981 that he was not going to invest. Do you recall that testimony?
> A Do you recall that Mr. Blake received shares in the corporation for work performed?
> Ms. Byers: Your Honor, will you direct him to answer the question?
> The Court: Listen to the question and answer the questions, please.
> Bryant: Yes, sir.
> Q I'll ask you again. In October 1981, had Fred Blake already told you he was not going to invest in the corporation? Yes or no.

> A No. No.
> Q No he had not?
> A No.
> Q So his testimony to that effect was untrue. Is that correct?
> Defendant's counsel: Again, your Honor, I object to that type of question....
> The Court: Overruled.

**13.** Bryant's counsel stated:

> I'll say this as a side. They don't really believe that they've got the right to use that silk screen equipment as collateral, an SBA loan, because, don't you know, like I said at the beginning of the trial if they'd had that inclination, if they thought it really was, it wouldn't still be in California, ladies and gentlemen. They would have gone and got it. They'd get a search warrant.

**14.** In response, the prosecutor stated:

> On the subject of the silk screen equipment, first of all, [defense counsel] is doing some-

the prosecutor's statement, while improper, was invited by defense counsel's remarks; moreover, any error from such a statement fell short of reversible error because of the district court's curative instruction.

As the Supreme Court recently stated in *United States v. Young*, —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), "the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly. In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant." *Id.* at ——, 105 S.Ct. at 1045, 84 L.Ed.2d at 10. The Court further stated that "the issue is not the prosecutor's license to make otherwise improper arguments, but whether the prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant." *Id.* —— U.S. at ——, 105 S.Ct. at 1045, 84 L.Ed.2d at 10–11.

██ Here, defense counsel's argument implied that the silk screen equipment was not collateral under the SBA loan and thus that count seven, charging Bryant with conversion of collateral could not stand. The evidence conclusively established, however, and the jury was entitled to find, that the equipment was acquired by Brochlmns, that Bryant signed an agreement providing that anything acquired by Brochlmns would become collateral for the loan and that Bryant converted the equipment to his own use. The mere fact that the SBA liquidation division did not take possession of the equipment in no way undermined the strength of the evidence establishing Bryant's conversion of the equipment. In light of the strength of this evidence, therefore, we conclude that the response by the prosecutor did not affect the jury's ability to judge the evidence fairly.

Finally, the district court instructed the jury to disregard both counsel's statements and to examine the case based solely upon the evidence presented at trial.[15] Thus, even if the prosecutor's remarks were improper, the strength of the evidence of defendant's guilt as to count seven and the district court's cautionary jury instruction preclude a finding here of reversible error. *See United States v. McPhee*, 731 F.2d 1150, 1152 (5th Cir.1984).[16]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

thing that isn't really fair. He's suggesting to you there's some reasons [sic] why we didn't get that silk screen equipment. Well there's nothing in the record about that. You don't know what procedures we need to go to, and so really for him to suggest there's a reason why we haven't when we can't get that into evidence is not fair....

15. The district court instructed the jury as follows:

Ladies and gentlemen of the jury, sometimes counsel and other parties of this adversary partisan system overstep the rules of procedure in summation by calling on the other, "Why didn't you call witnesses in to prove this or not prove this?" In this case we have had an illustration of both counsel for the prosecution and counsel for the Government asking such questions, and I'm going to tell you that each side has an equal right to subpoena witnesses. The Government has the burden of proof in the case, of course, but to go into

matters that are not in the record is impermissible on the part of either counsel, and the Court therefore instructs you that in any instance where you find that this is done, that you are to disregard such statements or arguments of counsel.

16. In his supplemental brief, Bryant contends that the government, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), withheld from defense counsel, prior to trial, 39 documents that were subsequently admitted into evidence. The record reflects, however, that the government failed to turn over only five or six out of more than 70 documents that were introduced at trial, that these documents were *not* exculpatory, and that the government either did not have or did not plan to use the documents before trial. Further, the entire SBA file had been available for Bryant's inspection before trial. We find Bryant's *Brady* argument meritless.