# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 4, 2011

No. 10-50546

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JEREMY HEATH NED,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:

Defendant-Appellant Jeremy Ned appeals the district court's denial of his motion to suppress and his jury conviction for possession of crack cocaine with intent to distribute. Ned contends that (1) he had standing to pursue the motion to suppress, (2) the police violated his Fourth Amendment rights by engaging in an illegal search, (3) the evidence at trial was legally insufficient, and (4) the district court made erroneous evidentiary rulings that require reversal, or in the alternative, amount to cumulative error. We AFFIRM.

I.

On August 13, 2009, Ned checked into the Knights Inn hotel in Midland, Texas. According to the manager of the Knights Inn, Mary Lozano, Ned provided the hotel with a copy of his driver's license and filled out documentation stating that he drove a Jeep. The next day, August 14, 2009, Ned arrived at the apartment he shared with his girlfriend, Adrianna Mayfield, and her three young children. Mayfield testified that she and Ned got into a heated argument because she saw Ned with a large quantity of drugs. Ned left the apartment after the fight, taking the drugs with him in a Gucci bag. About 30 to 45 minutes later, Ned returned to the apartment to gather his belongings. Mayfield pleaded with him to stay, and argued with him again. Ned then called the police to help him retrieve his belongings from Mayfield's apartment. Officer Welch responded to the "disturbance call" and arrived at the apartment around 9:15 P.M. Ned gathered his clothes and left the apartment.

At 11 P.M. that same evening, Mayfield called the police and told them that Ned was in possession of drugs. Mayfield informed the police that Ned may be selling drugs at Club Remy, a local nightclub. She also noted that Ned was driving a gray Jeep Cherokee, and that the drugs were hidden inside a Gucci bag. Accordingly, Officer Eric White was dispatched to Club Remy around 12:30 A.M. to begin looking for a gray Jeep Cherokee. He located the vehicle and observed through the windows a Gucci bag on the back passenger floorboard of the vehicle. He also saw a box with plastic sandwich bags sticking out of the Gucci bag.

At this time, K-9 Officer Chad Simpson arrived at the scene and conducted a narcotics search on the exterior of the locked, empty Jeep with his drug-detecting dog, Sid. Sid alerted to the back, passenger side of the Jeep, indicating the presence of narcotics. Officer Simpson testified that there was nothing else around that could have caused the dog to alert. After Sid detected narcotics, the officers contacted Detective Sean Sharp to confirm that they should open the

Jeep. After receiving the go-ahead, the officers then opened the Jeep with a slim jim. It is undisputed that no officer entered the vehicle before Sid alerted. Officer Simpson shined a flashlight into the interior of the Jeep to ensure that there were no harmful objects, and then allowed Sid to enter the vehicle. Sid promptly alerted to the brown Gucci bag that was on the floorboard. The officers entered the vehicle, obtained the Gucci bag, and searched it, finding approximately 270.4 grams of crack cocaine, MDMA (ecstacy) pills, an ounce of marijuana, drug paraphernalia, and over $300 in cash. The officers also recovered a set of car keys with an Auto Zone reward card on it and a motel room key from the Knights Inn motel.

Officers were unable to locate Ned inside Club Remy, and nobody came forward to claim ownership of the Jeep. However, Edward Dunson, a frequent patron of Club Remy, testified at trial that Ned was in fact at Club Remy on the night in question and that Ned was driving the Jeep on this same night. The Jeep was then inventoried, "towed and impounded." It was later determined that the Jeep was licensed and registered to an Alma Briones, from Dallas, Texas.

Officer White later traveled to the Knights Inn in Midland and verified that the room key found in the Gucci bag belonged to one of the rooms at the Knights Inn, which Ned had rented on August 13-14, 2009. Mary Lozano, the manager of the Knights Inn, testified that on August 1-2 and August 13-14, 2009, Ned rented a room at the Knights Inn. Lozano testified that Ned was the individual who rented the room with the motel key in question, based on Knights Inn registration documents. Lozano also testified that Knights Inn requires guests to provide a copy of their driver's license upon check in. Ned had provided his driver's license when he checked into the Knights Inn and had also filled out other documentation showing that he drove a Jeep. Because the Gucci bag also contained a key ring with an Auto Zone rewards card, officers did an investigation into the rewards card. At trial, Debra Garcia, a district manager

for Auto Zone, testified that the Auto Zone card found in the Gucci bag was registered to a Eugene Ned, from Dallas, Texas.  In addition, Billy Aldridge testified that while he and Ned shared a holding cell, Ned confessed to possessing the crack cocaine that was found in the Jeep on August 14, 2009. Ned did not testify at trial.  The jury convicted Ned of one count of possession with intent to distribute, and the district court sentenced him to twenty years imprisonment.  Ned appeals the district court's denial of his motion to suppress and his jury conviction.[1]

## II.

It is well-established that warrantless searches of automobiles are permitted by the Fourth Amendment if supported by probable cause.  *United States v. Seals*, 987 F.2d 1102, 1107 (5th Cir. 1993).  Under the "automobile exception" to the warrant requirement, officers may conduct a search if they have probable cause to believe that the vehicle contains contraband or evidence of a crime.  *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993).  This exception to the warrant requirement applies to unoccupied, parked cars in places not used for residential purposes.  As the Supreme Court in *California v. Carney* held:

> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception come into play.  First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving.  Second, there is a reduced expectation of

---

[1] In his appeal of the district court's denial of the motion to suppress, Ned contends that the district court erred both by holding that Ned did not have standing, and that even if Ned had standing, that there was no fourth amendment violation.  Because we find that the police had probable cause, we need not address Ned's standing claim.  *See United States v. Pack*, 612 F.3d 341, 349 & n.4, *modified*, 622  F.3d 383 (5th Cir. 2010) (noting that a decision to resolve a Fourth Amendment claim on the merits without addressing standing "is not an exercise of 'hypothetical jurisdiction' like that prohibited by the Supreme Court" because "the question of Fourth Amendment 'standing' is not truly a question of standing in the first place, but is instead an issue of the merits of [defendant's] claim.") (internal citations omitted).

> privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. . . . Our application of the vehicle exception has never turned on the other uses to which a vehicle might be put. The exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation.

471 U.S. 386, 392-93 (1985); *see also Mack v. City of Abilene*, 461 F.3d 547, 553 n.2 (5th Cir. 2006) (holding that automobile exception applies to searches of unoccupied, parked cars in parking lots because both *Carney* factors are applicable) (citing *United States v. Gallman*, 907 F.2d 639, 641 (7th Cir. 1990)). Therefore, as long as the officers had probable cause to search the car, the search was reasonable under the Fourth Amendment.

"Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994). We have repeatedly affirmed that an alert by a drug-detecting dog provides probable cause to search. *See, e.g., Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000) (holding that a "drug-sniffing canine alert is sufficient, standing alone, to support probable cause for a search").

Here, the officers had more than sufficient probable cause to support the search. At the suppression hearing, Officer Simpson testified that Mayfield "called in, said her boyfriend, Jeremy Ned, was driving a 2000 Jeep Grand Cherokee, had Texas license plate MXM404. There was supposed to be a Gucci bag inside with a large amount of crack cocaine inside." In addition, Officer White testified that Mayfield left her name and a contact number, and told police that Ned was at Club Remy selling drugs. Once the officers reached Club Remy, they easily located the Jeep parked in front of the club. Officer White testified that he looked inside the vehicle and saw a Gucci bag in the back of the

Jeep, and a "box of sandwich baggies that was sticking out of the Gucci bag." Most importantly, after Officer White noticed the Gucci bag, Officer Simpson testified that he and his trained drug-detecting dog, Sid, walked around the exterior of the Jeep. Sid then alerted to the back, passenger side of the Jeep, indicating that narcotics were present. Thus, based on the evidence presented at the hearing, the officers had probable cause to search the Jeep.

## III.

Ned also contends that the evidence at trial was legally insufficient to support a conviction. The sufficiency of the evidence is reviewed to determine whether any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The standard of review is, therefore, whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). This court considers the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices made in support of the verdict. *Id.* The court looks to whether the trier of fact made a rational decision, rather than whether it correctly determined the defendant's guilt or innocence. *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995). The standard of review is the same whether the evidence is direct or circumstantial. *United States v. Bryant*, 770 F.2d 1283, 1288 (5th Cir. 1985).

In proving that a defendant committed the offense of possession with intent to distribute cocaine base, the government must establish that the defendant (1) knowingly, (2) possessed cocaine base, (3) with intent to distribute it. *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996). On appeal, Ned contests only the "knowledge" element. It is well-settled that the knowledge element for possession of drugs can rarely be proven by direct evidence. *Lopez*, 74 F.3d at 577. Because knowledge and intent are subjective elements, for which direct proof is not required, the elements may be inferred from the

circumstances of the case. *United States v. Ledezma-Hernandez*, 729 F.2d 310, 314 (5th Cir. 1984); *United States v. Inocencio*, 40 F.3d 716, 725 (5th Cir. 1994).

Ned contends that the only evidence linking him "to the Jeep was a hotel registration card." This is incorrect. Ned fails to mention the Auto Zone reward card that the police recovered linking Ned to the Jeep. Ned also does not credit the testimony of four witnesses at his trial, Adrianna Mayfield, Edward Dunson, Billy Aldridge, and Mary Lozano. Mayfield testified that, on the night in question, she personally saw Ned hide drugs in a Gucci bag. In addition, Dunson testified that he saw Ned drive the Jeep Cherokee at issue to the club the night of August 14, 2009—the night that the police searched the Jeep and recovered the drugs. Dunson also testified at trial that Ned was at Club Remy that night and that he watched Ned leave through the front door once people inside the club became aware of the police presence.

Most significantly, Aldridge testified that Ned confessed to him while they were in a holding cell together. Aldridge corroborated Mayfield's testimony regarding the events that took place on August 14, 2009, confirming Ned's presence at Club Remy that night. Ned also told Aldridge that he had hidden 9 ounces of crack cocaine (the exact amount recovered was 270.4 grams or about 9 ounces) in a Gucci bag, in the back seat of the car. Ned also told Aldridge that the car was "not in my name" but was in the name of "somebody in Dallas" (the car was registered to Alma Briones of Dallas, Texas). Moreover, Ned told Aldridge that he was worried about the "room keys that he left in the car" because, according to Ned, "that's the only way they can get me, is those room keys."

The room keys that Ned was worried about were to the Knights Inn motel, where Ned had spent the night of August 13, 2009. At trial, Mary Lozano, the manager of the Knights Inn, testified that Ned had rented a room at the motel on August 1-2, and August 13-14, 2009. She also noted that Ned had provided a copy of his driver's license and had filled out other documents noting that he

drove a Jeep. Therefore, based on the evidence presented at trial, a rational jury could have found that Ned knowingly possessed the crack cocaine.

## IV.

Ned also challenges three of the district court's evidentiary rulings. This court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Jefferson*, 623 F.3d 227, 233 (5th Cir. 2010). We shall review each of the rulings in turn.

First, Ned contends that the district court abused its discretion by allowing Mayfield's testimony recounting one of his alleged out-of-court statements. Specifically, Ned points to the following exchange during the prosecutor's direct examination of Mayfield:

BY MS. FLECK:

Q. What did [Ned] tell you when he called you?

A. Go to the front door.

Ned objected at trial to the above statement as hearsay. Under Federal Rule of Evidence 801(a), (d)(2), a statement is not hearsay if it is offered against a party and is the party's own statement. According to Ned, a statement is an "oral assertion" and that the words "go to the front door" is not an oral assertion of any fact, and is therefore not a statement. Thus, Ned contends, this non-assertive oral conduct cannot be an admission by a party-opponent. Ned is correct but his argument is unavailing. Non-assertive oral conduct is simply not hearsay. *See United States v. Weeks*, 919 F.2d 248, 251 (5th Cir. 1990) ("Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted; a statement is an oral or written assertion. . . . We conclude that the [testimony] reported non-assertive oral conduct and was therefore not hearsay.") (internal citations and quotation marks omitted). Therefore, even if the admission-by-party-opponent exclusion does not apply, it does not matter

because Ned's non-assertive oral conduct in question is not hearsay, and therefore admissible.

Second, Ned contends that the district court abused its discretion by allowing admission of an Auto Zone card registered to "Eugene Ned." At trial, Ned objected to the Auto Zone card's admission on the grounds that the government failed to establish that the card registration was a regularly-kept business record. The Federal Rules of Evidence allow the admission of "records of regularly conducted activity" so long as the record was  (1) "made at or near the time by, or from information transmitted by, a person with knowledge," (2) "kept in the course of a regularly conducted business activity," and (3) "it was the regular practice of that business activity to make the [record]." Fed. R. Evid. 803(6). At trial, the government called Debra Garcia, the district manager for Auto Zone, to authenticate the Auto Zone record. Garcia testified about the rewards the Auto Zone card offers its customers and explained how the card is scanned and used by Auto Zone. Garcia also testified that Auto Zone keeps this information in its normal course of business. Thus, Garcia's testimony established the prerequisites for admitting the record under the business records exception.

Ned claims that the district court erred because "Garcia admitted that she was not present when the Auto Zone customer applied for the customer card and that Auto Zone did not verify the identification of the customer applying for the card." Ned is mistaken. "[T]here is no requirement that the witness who lays the foundation for the admission of a record under the business records exception to the hearsay rule be the author of the record or be able to personally attest to its accuracy." *United States v. Armstrong*, 619 F.3d 380, 384-85 (5th Cir. 2010). Rather, a qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of the business records exception are met. *United States v. Jones,* 554 F.2d 251, 252 (5th Cir. 1977) (finding that a proper foundation was laid under Rule 803(6) because the

witness was able to identify the record as authentic and specify that it was made and preserved in the regular course of business). Accordingly, the district court did not err in admitting the Auto Zone registration under Federal Rule of Evidence 803(6).

Ned also contends for the first time on appeal that the district erred by admitting the Auto Zone registration because the record was more prejudicial than probative under Rule 403.  Because Ned did not raise the issue below, this court reviews for plain error. *United States v. Fair*, 979 F.2d 1037, 1039-40 (5th Cir. 1992).  There is no plain error here.  While all relevant evidence tends to prejudice the party against whom it is offered, Rule 403 excludes relevant evidence when the probative value of that evidence is substantially outweighed by the unfairly prejudicial nature of the  evidence. *United States v. Caldwell*, 586 F.3d 338, 342 (5th Cir. 2009).  The Auto Zone card tends to make Ned's possession over the crack cocaine more probable and is not in any way unfairly prejudicial.  Even if there was error here, Ned has not shown that the error affected his substantial rights—that is, affected the outcome of the proceeding—much less that the error seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *See, e.g., United States v. Franco*, 632 F.3d 880, 884 (5th Cir. 2011).  Given the other abundant evidence linking Ned to the Jeep, Ned has failed to establish plain error.

Third, Ned asserts that the district court abused its discretion by allowing Aldridge to give the following allegedly speculative testimony at trial:

ALDRIDGE: He said he had jumped in the car.  He had a room.  He said he had the room and—

PROSECUTOR: Let me stop you there.  What did that mean to you when he said that he had a room?

ALDRIDGE: I figured he was fixing to go to the room.

PROSECUTOR: What kind of room?

ALDRIDGE: Motel.  Like a hotel, motel.

No. 10-50546

Ned contends that Rule 602 was violated because Aldridge allegedly did not have personal knowledge about what Ned meant when he said he had a room. Ned's argument is unpersuasive. Later in his testimony, Aldridge made clear that Ned had referred to a hotel or motel room he was staying in. Moreover, assuming *arguendo* that there was error, it was harmless. Aldridge's testimony that Ned had a hotel room is cumulative of the Knights Inn manager's testimony establishing that Ned rented a room there on the night of August 13, 2009.

Finally, Ned argues that the district court's erroneous evidentiary rulings resulted in cumulative error sufficient to warrant a new trial. Under the cumulative error doctrine, "an aggregation of non-reversible errors can yield a denial of a constitutional right to a fair trial." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 2001). In this case, the district did not err. The non-assertive oral conduct was not hearsay, Aldridge's testimony was not speculative, and the Auto Zone card was a business record and not unfairly prejudicial.

V.

For the foregoing reasons, we AFFIRM Ned's jury conviction and the district court's denial of Ned's motion to suppress.

AFFIRMED.