(286 P.3d 232)
No. 106,480

STATE OF KANSAS, *Appellee*, v. JESSICA LUNDQUIST, *Appellant*.

Opinion filed September 21, 2012.

*Christopher Cuevas*, of Kansas City, for appellant.

*Andrew J. Dufour*, legal intern, *Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ATCHESON and BRUNS, JJ.

ATCHESON, J.: Defendant Jessica Lundquist contends Prairie Village police officers had no lawful basis to search her car without a warrant even though she met with an undercover agent in the car to facilitate illegal drug sales twice in 3 days, the second time just before she was arrested. The Johnson County District Court denied Lundquist's motion to suppress a small amount of marijuana police discovered during the search of her car. The court later convicted her of felony possession of marijuana as a repeat offender. Lundquist has appealed the ruling denying the motion to suppress. We affirm the district court because the search was reasonable under the Fourth Amendment to the United States Constitution. The officers had probable cause to search the car and needed no warrant based on the motor vehicle exception to the warrant requirement of the Fourth Amendment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Through a confidential informant, Prairie Village Police Officer Ivan Washington contacted Lundquist and arranged to buy 10 pills of ecstasy from her. Washington, working in an undercover capacity, met with Lundquist in the parking lot of a Lenexa supermarket on December 14, 2009, and purchased the pills for $90. Lundquist drove to the parking lot in her Nissan sedan. The two exchanged the drugs and money in her car. Lundquist told Washington she could arrange a discount price for a larger order and offered to sell him 100 pills for $700.

Washington took Lundquist up on her offer. He met with her in a restaurant parking lot in Prairie Village 3 days later. Lundquist again drove her Nissan but arrived in tandem with an Oldsmobile with several occupants. Washington first approached the Oldsmobile and was quickly directed to the Nissan, where Lundquist and a passenger were waiting. Lundquist told Washington to give her the money and she would then get the pills. Washington refused, saying he would only exchange the money for the drugs. At the suppression hearing, Washington testified he saw no drugs in Lundquist's car. Washington then got out of the Nissan and returned to his pickup truck. Lundquist went to the Oldsmobile and

then to the truck. After sitting down in the truck, she handed Washington the pills, and he gave her the money.

As soon as Lundquist left the truck and started toward her Nissan, other Prairie Village officers approached and arrested her. She was immediately handcuffed and read the *Miranda* warnings. Washington testified that Lundquist was perhaps one-and-a-half car lengths from the Nissan. The Oldsmobile sped off with other officers in pursuit. That chase ended in Kansas City, Missouri, when the suspects successfully evaded the officers.

After restraining Lundquist, Washington and other officers searched the Nissan. They found a small amount of marijuana in the side compartment of the driver's door, six ecstasy pills, and a handgun in the backseat area.

Lundquist already had a conviction for possession of marijuana. So the district attorney's office charged her with felony possession under the recidivist provisions of K.S.A. 2009 Supp. 21-36a06(b)(3), (c)(2); see K.S.A. 2009 Supp. 65-4105(d)(16) (designating marijuana as a controlled substance). The pills Lundquist sold Washington contained neither ecstasy nor any other controlled substance. Accordingly, the district attorney's office charged Lundquist with two counts of misdemeanor distribution of a noncontrolled substance represented to be a controlled substance. See K.S.A. 2009 Supp. 21-36a14.

Lundquist filed a motion to suppress the drugs and other items the police took from her car. The district court held an evidentiary hearing on the motion on August 18, 2010, and denied it in a bench ruling after hearing argument from counsel. The State offered three bases for denial: (1) the search was incident to a lawful arrest; (2) the police had probable cause and did not need a warrant under the motor vehicle exception; and (3) the items inevitably would have been discovered during an inventory search of the car. The district court relied on the first and third grounds to deny the motion. At a bench trial on April 7, 2011, the district court found Lundquist guilty of all three charges. She was placed on probation for 18 months, with an underlying sentence of 13 months in prison. Lundquist has timely appealed.

## Legal Analysis

On appeal, Lundquist argues the district court erred in granting the motion to suppress, a ruling implicating only her felony conviction for marijuana possession. The State asserts the same bases it presented to the district court for the propriety of the search. Because we find the Prairie Village police had probable cause to search Lundquist's car and the motor vehicle or automobile exception obviated the need for a warrant, we affirm the district court for that reason. We need not and, therefore, do not consider the other grounds the State advances for the constitutionality of the search.

In reviewing a district judge's ruling on a motion to suppress, an appellate court applies a bifurcated standard. The appellate court accepts the factual findings of the district judge if they are supported by competent evidence having some substance. The appellate court exercises plenary review over legal conclusions based upon those findings, including the ultimate ruling on the motion. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007); see *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). The prosecution bears the burden of proving a search or seizure to be constitutional by a preponderance of the evidence. *State v. Pollman*, 286 Kan. 881, 886, 190 P.3d 234 (2008) (allocation of burden; quantum of evidence); *Thompson*, 284 Kan. at 772 (allocation of burden).

By its express language, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" and, thus, prohibits government agents from engaging in unreasonable searches and seizures. To further that right, the Fourth Amendment also requires warrants based on probable cause be presented under oath to a judicial officer and any warrant describe with particularity the places to be searched and the person or objects to be seized. As a general matter, warrantless searches violate the Fourth Amendment, subject to certain defined exceptions. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999).

The Fourth Amendment applies to motor vehicles. *New York v. Class*, 475 U.S. 106, 114-15, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986); *State v. Sanchez-Loredo*, 294 Kan. 50, 59, 272 P.3d 34 (2012). But the Court has long recognized that government agents need not obtain a search warrant for a motor vehicle if they have probable cause to believe contraband or evidence of criminal activity may be found there. *Dyson*, 527 U.S. at 466-67; *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996); *United States v. Ross*, 456 U.S. 798, 809, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 (1925). That is, a warrantless search of a motor vehicle based on probable cause alone will be considered reasonable under the Fourth Amendment. *Dyson*, 527 U.S. at 466-67 (The motor vehicle exception imposes "no separate exigency requirement" that some compelling circumstance effectively precludes government agents from obtaining a search warrant.). The motor vehicle exception to the warrant requirement is rooted in twin considerations: the ready mobility of the vehicles and the reduced expectation of privacy their occupants and owners enjoy. *Labron*, 518 U.S. at 940; *Ross*, 456 U.S. at 806-07, 823; *Sanchez-Loredo*, 294 Kan. at 57. The United States Supreme Court has succinctly stated the motor vehicle exception this way: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Labron*, 518 U.S. at 940. The exception also embraces a search for evidence of a crime supported by probable cause. *California v. Acevedo*, 500 U.S. 565, 580, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991); *United States v. Ned*, 637 F.3d 562, 567 (5th Cir.), *cert. denied* 132 S. Ct. 276 (2011); *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005); *Sanchez-Loredo*, 294 Kan. at 59; see *California v. Carney*, 471 U.S. 386, 395, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) (Armed with probable cause, law enforcement officers could search "[a] vehicle for evidence of a crime" under the exception.).

For purposes of the motor vehicle exception, a car is considered "readily mobile" if it is operable, even though it may be parked at the time of the search. *Carney*, 471 U.S. at 392-93 (exception ap-

plies if vehicle is "capable" of use on the highway, although it "is found stationary in a place not regularly used for residential purposes"); *Ned*, 637 F.3d at 567. Courts have held the vehicle need not be occupied, see *Ned*, 637 F.3d at 567; *United States v. Gallman*, 907 F.2d 639, 641 (7th Cir. 1990), although the applicability of the exception to an unoccupied vehicle parked in a residential driveway has been questioned, see *United States v. Goncalves*, 642 F.3d 245, 250-51 (1st Cir. 2011).

Lundquist's Nissan sedan came within the motor vehicle exception when the Prairie Village police arrested her. The car was plainly operable. While the car was parked and Lundquist was not in it, the exception extends to vehicles in public or commercial parking lots or spaces. In this case, Lundquist arrived with a passenger who remained with the Nissan throughout the incident. The passenger could have operated and removed the car, though nothing in the record indicates he or she had any intention or desire to do so. The passenger's physical presence, nonetheless, bolsters the applicability of the exception.

The police officers also had to have probable cause for the search to satisfy the Fourth Amendment as applied to motor vehicles. Probable cause supporting a constitutional search requires that government agents possess specific facts leading a reasonable person to conclude evidence of a crime may be found in a particular place. The standard sets the bar at "a fair probability" in light of the factual circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (search warrant may issue when the supporting affidavit establishes "a fair probability that contraband or evidence of a crime will be found in a particular place"); *Sanchez-Loredo*, 294 Kan. at 55 (probable cause to search a motor vehicle requires a " 'fair probability' that the vehicle contains contraband or evidence" based on the "totality of the circumstances"); *State v. Bottom*, 40 Kan. App. 2d 155, 161, 190 P.3d 283 (2008), *rev. denied* 287 Kan. 766 (2009).

Lundquist suggests the officers did not have adequate cause, since Washington saw no drugs in the Nissan during the second transaction. Lundquist plainly got the pills she sold from the occupants of the Oldsmobile. But Lundquist takes too narrow a view

of the facts and what the officers properly could search for. Lundquist had 90 pills she represented to be a controlled substance in her car 3 days before. That alone might have been fresh enough information to obtain a search warrant for the car on the day Lundquist was arrested. See *United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005) (discussing staleness of information in determining probable cause to search car for illegal drugs); *United States v. Brookins*, 345 F.3d 231, 236 (4th Cir. 2003) (officers' observations furnishing probable cause for warrantless search of motor vehicle for drugs had not become stale in 15 minutes but would have been so 2 weeks later). In addition, however, when the police arrested Lundquist, she was using the Nissan to facilitate a second drug transaction involving a much larger quantity of pills. Although those drugs were plainly kept in another place—the Oldsmobile—that doesn't negate the possibility she might have had a smaller stash of pills or other contraband in her car. And the two transactions close in time suggest Lundquist's continuing involvement in trafficking, increasing the probability she would keep drugs in the car on a regular basis.

Apart from the pills, the officers had probable cause to search the car for other evidence of drug trafficking. Lundquist's immediate involvement in a sale of what appeared to be and what she represented to be illicit drugs cleared that standard. Even if Lundquist had no pills or other drugs in the Nissan during the second transaction, she very well could have had other incriminating items. A cell phone, for example, would have call history information that could point to Lundquist's suppliers or other contacts. There might be text messages providing similar evidence. Lundquist might have kept handwritten notes of telephone contacts, addresses, or specific transactions. A large amount of cash would be indicative of drug trafficking. So would the presence of materials, such as plastic sandwich bags, commonly used to package illicit drugs for distribution. Lundquist's direct participation in the sales coupled with her use of the Nissan to carry out those transactions furnished the police officers probable cause to search the car. The officers searching the Nissan for that sort of evidence would have discovered the marijuana. It was in a place where those items might

reasonably have been found. See *Acevedo*, 500 U.S. at 580 (Under the motor vehicle exception, "police may search an automobile and containers within it where they have probable cause to believe contraband or evidence is contained."); *United States v. Cervantes*, 678 F.3d 798, 802 (9th Cir. 2012) (same). On the facts, we are not called upon to decide if government agents would have to obtain a warrant to search a smartphone after constitutionally seizing it under the motor vehicle exception. See *City of Ontario v. Quon*, 560 U.S. 746, 760-61, 130 S. Ct. 2619, 177 L. Ed. 2d 216 (2010) (discussing expectations of privacy persons may have in data contained in smartphones and the uncertain Fourth Amendment implications of those expectations); *United States v. Lujan*, No. 2:11CR11-SA, 2012 WL 2861546, at *11 (N.D. Miss. 2012) (slip opinion) (motor vehicle exception extends to search of cell phone seized from vehicle); *United States v. Stringer*, No. 10-05038-01-CR-SW-GAF, 2011 WL 3847026, at *8 (W.D. Mo. 2011) (unpublished opinion) (applying exception but characterizing law as "unsettled"); *United States v. Park*, No. CR 05-375 SI, 2007 WL 1521573, at *9 (N.D. Cal. 2007) (unpublished opinion) (rejecting search incident to arrest as basis to search cell phone, especially given the quantity and type of data it may hold).

Lundquist did not explicitly rely on the Kansas Constitution Bill of Rights § 15 as a basis to suppress the marijuana. That provision contains functionally the same language as the Fourth Amendment. The Kansas Supreme Court has consistently interpreted the Kansas constitutional protections against unreasonable searches and seizures to be no greater than those in the Fourth Amendment. See *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011). The court declined to consider the application of the Kansas Constitution in *Sanchez-Loredo*, 294 Kan. at 59, because the defendant had not cited or argued the provision. We have no reason to conclude Lundquist would have succeeded with an argument based on the Kansas Constitution absent a contrary ruling from the Kansas Supreme Court. And there isn't one.

In sum, the search of Lundquist's car met the test of reasonableness under the Fourth Amendment consistent with the motor

vehicle exception to the warrant requirement. The district court correctly denied the motion to suppress and properly admitted the marijuana as evidence in the prosecution of Lundquist.

Affirmed.