**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 31, 2011

Lyle W. Cayce
Clerk

No. 10-50463

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ROBERTO OLIVAS; CARLOS HUMBERTO MONTOYA,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
U.S.D.C. No. 7:09-CR-172-1

Before JONES, Chief Judge, and KING and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Carlos Humberto Montoya and Roberto Olivas appeal their convictions for wire fraud, in violation of 18 U.S.C. § 1343, and conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Montoya presents two claims; Olivas, five. Each claim is subject to a narrow standard of review because it was not preserved in district court. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50463

## I.

Atlas Pipeline Partners, L.L.P. sold condensate produced from gathering and transporting natural gas.  H2Oil Recovery Services, Inc., based in Utah with a facility in Texas, purchased condensate.  Olivas owned Freedom Oilfield Vacuum Service and contracted with Atlas to remove condensate from its pipelines.  Instead of placing it in Atlas' tanks, Olivas, with the help of two H2Oil employees, would steal it and sell it to H2Oil by using false run tickets.  They were transmitted by email or fax (wire transfers) to H2Oil's office in Utah, which sent payment to Olivas or Freedom.

A jury found Olivas and Montoya guilty on ten counts of wire fraud (one count was dismissed at trial) and one count of conspiracy.  Olivas was sentenced, *inter alia*, to 76 months' imprisonment for each count; Montoya, *inter alia*, to 37 months for each count.  The sentence for each count was to be served concurrently.

## II.

## A.

Montoya contends the district court abused its discretion by failing to question a sleeping juror and take appropriate remedial action. (Along that line, Montoya's ineffective-assistance-of-counsel claim for that incident is addressed in part II.C.)

An attorney for the Government informed the court that a juror was sleeping through defense counsel's closing argument.  Because Montoya failed to object in district court regarding that juror, review is only for plain error. *E.g.*, *United States v. Puckett*, 505 F.3d 377, 384 (5th Cir. 2007).  Under such review, Montoya must show a clear or obvious error that affected his substantial rights.  *Id*.  Even if he does so, our court retains discretion to grant relief and generally will do so only when the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings".  *Id*. (citation and internal quotation marks omitted).

Montoya maintains he was prejudiced because the juror slept during a critical phase of trial. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) (noting trial unfair if defendant denied counsel at critical stage).  He asserts that the court

2

should have:  questioned the juror to determine how much of the argument was missed; and remedied the situation by allowing defense counsel additional time for argument.

Upon being advised that a juror was sleeping, the district judge required the jury to stand and stretch; he also asked the jurors if they needed water and told them they were free to remove their jackets.  There is no evidence the juror slept through presentation of evidence or the court's instructions to the jury, one of those instructions being that attorney's arguments are *not* evidence.  Accordingly, there is no showing of prejudice sufficient for plain error.

### B.

Olivas contends:  there was insufficient evidence to prove he knew that wire transfers—paperwork which had to be submitted to H2Oil in Utah in order to receive payment—would follow in the ordinary course of business, or that such transfers were foreseeable to him; the district court erred at *voir dire* in questioning jurors regarding oil-industry ethics; it erred by not including certain items during preliminary instructions to the jury; and the Government made improper statements in its opening statement and closing argument.

### 1.

Olivas maintains there was no evidence he knew of interstate wire transfers or could reasonably foresee them.  At the close of the Government's case, he moved under Rule 29 for judgment of acquittal, contending a rational trier of fact could not find that he "intended to defraud Atlas and in doing so committed wire fraud in any way, shape, or form".  At the close of his case, he reurged this motion for reasons "identical to the previous [motion]".

"Where, as here, a defendant asserts *specific grounds* for a specific element of a specific count for a Rule 29 motion, he waives all others for that specific count." *United States v. Herrera*, 313 F.3d 882, 884 (5th Cir. 2002) (emphasis in original). Because Olivas failed in his Rule 29 motion to raise the issue presented here, review is only for a manifest miscarriage of justice. *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007) (using this narrow standard where motion for

No. 10-50463

judgment of acquittal insufficiently preserves a claim). This standard is much narrower than had the issue been preserved in district court, *Herrera*, 313 F.3d at 885; the record is reviewed to determine whether it is devoid of evidence that Olivas either knew of the wire transfers or they were foreseeable to him, or the evidence is so tenuous that a conviction is shocking. *United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007).

To prove wire fraud, the Government must establish: (1) a scheme to defraud; and (2) defendant used interstate wire communication facilities, or caused another person to use such facilities, for the purpose of carrying out the scheme. 18 U.S.C. § 1343; *United States v. Radley*, 632 F.3d 177, 184 (5th Cir. 2011). The court properly instructed the jury that, to "cause" interstate wire facilities to be used, defendant must do "an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen". *See Pereira v. United States*, 347 U.S. 1, 8-9 (1954).

Olivas has failed to satisfy the manifest-miscarriage-of-justice standard. The record reflects: run tickets were sent from H2Oil's Texas office to its Utah office; the Utah office was in charge of authorizing payments and mailing them; and Olivas or Freedom received such payments. An employee for H2Oil testified that H2Oil's corporate office was in Utah, and that the run tickets were sent to that office. Another H2Oil employee affirmed that the Utah office was in charge of paying invoices. Thus, the record contained evidence that, in order to receive authorization for payment, use of interstate wire facilities was at least foreseeable to Olivas. *See, e.g.*, *United States v. Faulkner*, 17 F.3d 745, 773 (5th Cir. 1994).

**2.**

Olivas also claims error in: the district court's questioning the jury during *voir dire* about oil-industry ethics and not including certain items during preliminary instructions to the jury, provided between *voir dire* and the Government's opening statement; and the Government's opening statement and closing argument. Because he did not object in district court to these claimed

errors, review is only for plain error. *See Puckett*, 505 F.3d at 384. For each claim, Olivas fails to show such error.

**a.**

Olivas contends the district court erred at *voir dire* by asking the venire members whether they thought dishonest practices were accepted or encouraged in the oil industry. He maintains he was prejudiced because that question "created an atmosphere in the courtroom whereby anyone working in the oil field was presumably dishonest".

*Voir dire* is critical to assuring defendant's Sixth Amendment right to an impartial jury. *See, e.g.*, *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). As such, the trial judge is afforded broad discretion in conducting it and may assess impartiality and credibility by relying on his "own evaluations of demeanor evidence and of responses to questions". *Id.*; *see also United States v. Birdsell*, 775 F.2d 645, 652 (5th Cir. 1985).

**b.**

Olivas next asserts the court erred by failing to remind the jury, during preliminary instructions, of the Government's burden of proof, the presumption of innocence, and defendant's right not to testify. Even assuming the court should have done so, its jury charge *did*.

**c.**

Olivas' next claim concerns the following statements by the Government during its opening statement and closing argument: (1) it would be undisputed that the condensate sold to H2Oil came from Atlas' facilities; (2) a Government witness was truthful; (3) the jurors' relatives may have been victimized by the offense; (4) a valid reasonable doubt could be reached only at the end of deliberations; (5) a conspiracy could be found if defendant agreed with others not charged; (6) indirectly alluding to Olivas' decision not to testify; (7) expressing personal opinions; and (8) relying on the prestige of the United States Attorney's office to bolster the testimony of a witness.

No. 10-50463

To determine whether substantial rights were affected, a court reviews: the magnitude of the statement's prejudice; the effect of any cautionary instruction given by the court; and the strength of the evidence of defendant's guilt. *United States v. Duffaut*, 314 F.3d 203, 211 (5th Cir. 2002). "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004).

Some of these statements were not error. Stating that the evidence would be undisputed that the condensate sold was from Atlas' facilities was not an intentional statement regarding Olivas' decision not to testify. Similarly, stating that a Government witness would "tell you quite honestly that he's hoping . . . [for a] lesser sentence" was not an expression of personal belief as to the truthfulness of that witness.

Arguably, some statements were improper; but, none affected Olivas' substantial rights or cast serious doubt on the correctness of the verdict. Any prejudice caused by these statements was minimal. The court instructed the jury that "any statements, objections, or arguments by the lawyers are not evidence". It also instructed the jury that the Government had the burden of proving guilt beyond a reasonable doubt. Moreover, the evidence strongly pointed towards Olivas' guilt.

## C.

Montoya and Olivas claim ineffective assistance of counsel (IAC) concerning the foregoing claimed errors. As a general rule, our court will not address IAC claims on direct appeal unless they were raised in district court. *United States v. Valuck*, 286 F.3d 221, 229 (5th Cir. 2002). An exception is "where the record allows us to evaluate fairly the merits of the claim". *United States v. Navejar*, 963 F.2d 732, 735 (5th Cir. 1992) (citation and internal quotation marks omitted). That exception does not apply here.

## III.

For the foregoing reasons, the judgments are AFFIRMED.